UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
JAMES K. BREDAR
UNITED STATES MAGISTRATE JUDGE
MDD_JKBChambers@mdd.uscourts.gov

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-0950 OFFICE
(410) 962-2985 FAX

November 16, 2010

TO ALL COUNSEL OF RECORD

    Subject:  *Benjamin F. Hott v. Michael J. Astrue, Comm'r of Social Security*
                 Civil Action No.:  JKB-09-2729

Dear Counsel:

       On October 21, 2009, the Plaintiff, Benjamin F. Hott, petitioned this Court to review the Social Security Administration's final decision to deny his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Compl., ECF No. 1.) I have considered the parties' cross-motions for summary judgment. (ECF Nos. 19 & 25.) No hearing is necessary. Local Rule 105.6. This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3). *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). I am affirming the agency's decision, and I am writing this letter to explain my rationale.

## Background

       Mr. Hott's benefits applications were based upon his claim of disability due to back and neck problems and medications. (Tr. 116.) His claim was denied initially and upon reconsideration. (Tr. 40, 42, 50.) After receiving testimony at an administrative hearing and reviewing the medical evidence, the Administrative Law Judge ("ALJ") found that Plaintiff has the following severe impairments: disorder of the back, carpal tunnel syndrome, and an affective disorder. (Tr. 13.) She, however, determined that none of Mr. Hott's impairments satisfied the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1 ("LOI"). (Tr. 14-15.) The ALJ further determined that Plaintiff has the residual functional capacity ("RFC") to perform work at the light exertional level except that he cannot climb ropes, ladders, or scaffolds, he can occasionally climb and bend, and he can frequently but not constantly or repetitively finger or handle; additionally, he can understand, remember, and carry out simple instructions and tasks. (Tr. 15.) Based upon the vocational expert's testimony, the ALJ concluded that Mr. Hott was unable to perform his past relevant work. (Tr. 18.) However, taking into consideration his age, education, work experience, and RFC, the ALJ concluded that jobs that Plaintiff can perform – specifically, those of representative occupations including cafeteria attendant, laundry folder, warehouse checker, charge account clerk, food and beverage order clerk, and surveillance system monitor – exist in significant numbers in the national economy and that, therefore, he is not

disabled. (Tr. 18-19.) The Appeals Council denied review. (Tr. 1-4.) Afterward, Mr. Hott filed suit for judicial review.

Plaintiff asks this Court to grant summary judgment in his favor or to remand for further proceedings. He makes the following arguments:

1. The ALJ did not properly analyze Mr. Hott's credibility;

2. The ALJ did not consider all favorable evidence;

3. The ALJ did not give appropriate weight to treating physicians' opinions and that of the state agency consultant;

4. The ALJ improperly evaluated Mr. Hott's activities of daily living;

5. The Appeals Council did not give proper consideration to new and material evidence submitted after the ALJ's decision; and

6. The ALJ's hypothetical question to the vocational expert was not proper.

(Pl.'s Br. 5-16, ECF No. 11.)


Issue 1: Plaintiff's Credibility

Mr. Hott contends the ALJ incorrectly found he was not credible. He cites four points. The first is that the ALJ found no evidence of muscle atrophy that could reasonably be expected from his claim as to the amount of time he spends lying down. Plaintiff contends this is a medical opinion that the ALJ is unqualified to render. (Pl.'s Br. 6.) Noting the absence of evidence of muscle atrophy is a mere observation about the state of the record, not a medical opinion. Comparing the absence of that evidence with Mr. Hott's claim that he spends most of his time lying down is only an exercise in logic that may reasonably be applied to evaluate his credibility. Mr. Hott's further contention that he would have a 25% loss of productivity if he only lay down for two hours daily is speculation dependent upon a contrary judgment as to his credibility. Credibility choices are within Defendant's province as the finder of fact. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985).

The second point is that the ALJ relied upon a medical report that predated by four months the alleged date of disability onset. In that report, the doctor advised Mr. Hott to avoid lifting weight more than thirty pounds. (Tr. 197.) The ALJ accorded significant weight to that restriction in establishing Plaintiff's RFC. (Tr. 17.) Mr. Hott cites no authority for his argument that the ALJ should not have relied upon this report. The ALJ made a reasonable choice to rely upon this record, to which Plaintiff waived objection at the hearing. It is fairly close in time to

the time period at issue and helpful to the fact-finder in understanding Mr. Hott's medical history.

The third point is a general claim that the ALJ did not properly evaluate Plaintiff's activities of daily living ("ADLs") because she did not refer to evidence favorable to him or give proper weight to treating physicians' opinions. This claim is unsupported by factual or legal authority and is without merit.

The fourth point is Plaintiff's contention that the ALJ ruled that no clinical tests proved he had arthritis, contrary to his testimony, even though blood tests showed the presence of an inflammatory process. He refers to two places in the administrative record to support his argument. The record citations to which Mr. Hott makes reference establish only a mere possibility of inflammatory arthritis (Tr. 278, 282), not a diagnosis. The ALJ correctly determined that the record contains no clinical evidence of inflammatory arthritis. No reason exists to disturb the ALJ's credibility choice, which rested not just upon the specific points contested by Plaintiff but also upon an assessment of the entire record that, in the ALJ's opinion, showed he exaggerated his symptoms and limitations. (Tr. 16.)

Issue 2:  Consideration of Evidence Favorable to Mr. Hott's Claim

Plaintiff broadly argues that the ALJ did not consider all favorable evidence, but fails to specify what evidence the ALJ supposedly disregarded. It is not this Court's function to construct an argument for a party. Mr. Hott's contention is without merit.

Issue 3:  Weight Assigned to Opinions of Treating Physicians and State Consultants

The opinion of Dr. Gallagher, who seems to have seen Plaintiff once or twice, was dramatically different from the RFC assessments by the consulting physicians. (*Compare* Tr. 232-34 *with* Tr. 224-31, 248-65.) The ALJ thusly evaluated Dr. Gallagher's opinion, which by every measure found marked limitations on Mr. Hott's ability to work:

> That opinion is out of proportion to the longitudinal medical evidence, the generally mild to normal objective findings, the nature of his medical care, the claimant's own statements that he does not have any mental health issues, and the claimant's own admitted, and significant, daily activities, and thus not entitled to controlling weight. However, some weight is given that opinion and it is incorporated in the residual functional capacity for unskilled light work.

(Tr. 17.) In contrast, the consultants' opinions, to the effect that Plaintiff retained the ability to perform the physical and mental requirements of light-duty work, were given "significant weight because they are consistent with the objective findings and the claimant's daily activities," which the ALJ discussed at length. (Tr. 16-17.) The ALJ duly considered Dr. Gallagher's opinion and

that of the consultants according to applicable standards. *See* 20 C.F.R. § 404.1527. No error was committed in this regard.

### Issue 4: Activities of Daily Living

Plaintiff next argues that the ALJ overstated his ADLs because she did not state the frequency, intensity, and duration of his activities. (Pl.'s Br. 12.) The ALJ found as follows:

> He testified that he assists his mother, who has to use a walker to get around, and in his other statements the claimant allowed that despite his pain, mental disorder, and related symptoms, he takes care of his own personal needs, does some housework, prepares simple meals, mows the grass, independently takes care of the animals (he feeds and waters the dogs and cows), takes walks outside about an hour, drives, shops about two hours at a time weekly, visits, calls his friends, and shoots pool (albeit not as often), and he needs no reminders, he reads, watches television, manages his own finances, follows instructions, completes tasks, and gets along with others. In addition, in contrast to his testimony[,] he allowed that he lies down to watch television about a half hour in the mornings rather than all day as alleged at the hearing and he informed treating sources that his symptoms improved when he stopped working (at a job that he described as requiring heavy lifting) rather than worsened.

(Tr. 17 (citations omitted).) The one point with which he takes issue is the feeding of the animals. He says that "[f]eeding and watering a dog takes virtually no effort (and the Plaintiff wrote that he needed help carrying bags of dog food from the store). With regard to the cows, the Plaintiff had only to turn on a faucet." (Pl.'s Br. 13 (citation omitted).) Even assuming that the ALJ was wrong about feeding the cows, one must conclude that the remainder of the ADLs was accurate based upon what is in the record. Moreover, Plaintiff has offered no authority requiring an ALJ to state "frequency, intensity, and duration" of a claimant's activities. That language appears to have been borrowed from a regulation that notes the relevancy of "[t]he location, duration, frequency, and intensity of your pain or other symptoms" to a determination of whether a claimant is disabled. 20 C.F.R. § 404.1529(c)(3)(ii). This issue is without merit.

### Issue 5: New Evidence following ALJ's Decision

Mr. Hott argues that the Appeals Council failed to state why it did not consider evidence that he has osteopenia in his lumbar spine as new and material evidence and failed to state what weight was given to the evidence. (Pl.'s Br. 14.) Although the Appeals Council is required to consider additional evidence when it relates to the period on or before the decision date, 20 C.F.R. §§ 404.970(b), 416.1470(b), it is not required to state why it did not consider the evidence as new and material and it is not required to state what weight was given to it. When the Appeals Council has incorporated additional evidence into the record, a reviewing court must

consider the record as a whole, including the new evidence, to determine whether substantial evidence supports the ALJ's findings. *Wilkins v. Secretary, DHHS*, 953 F. 2d 93, 96 (4th Cir. 1991).[1] Evidence is deemed "new" if it is not duplicative or cumulative, and it is considered "material" if a reasonable possibility exists that the new evidence would have changed the outcome. *Id.* The evidence cited by Plaintiff does not meet the standard of "new and material."

All that this record shows is a diagnosis of decreased bone density in the lumbar spine. A diagnosis by itself does not establish impairment, let alone a severe impairment or disability. *Corcoran v. Astrue*, No. SKG-08-913, 2009 WL 3100350, at *15 (D. Md. Sept. 22, 2009) (citing *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)). The record contains no evidence that Plaintiff's residual functional capacity is affected in any way by osteopenia, and certainly not beyond that which the ALJ has already accounted for in the RFC assessment. This argument is without merit.

Issue 6: Hypothetical Question for the Vocational Expert

Lastly, Plaintiff claims error because he contends the ALJ did not ask a proper hypothetical question. This claim is premised on the other alleged errors in the case, but since none of those prior claims has any merit, neither does this derivative argument.

Conclusion

For the foregoing reasons, the Court will enter a separate order AFFIRMING the agency's decision, DENYING Plaintiff's Motion for Summary Judgment, and GRANTING Defendant's Motion for Summary Judgment.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed accordingly.

Very truly yours,

/s/

James K. Bredar
United States Magistrate Judge

JKB/jh

---

[1] Although Plaintiff has suggested otherwise, *Wilkins* does not require a remand "whenever the Appeals Council fails to explain how it evaluated new evidence presented to it, regardless of whether this evidence could have changed the outcome when considered with the evidence produced before the ALJ." *Waters v. Astrue*, 495 F. Supp. 2d 512, 514 (D. Md. 2007).